# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01312-COA

**BHARAT B. PATEL, NEW VISION BRANDON**          **APPELLANTS**
**PLAZA, LLC, AND JAGDISH A. BAROT**

**v.**

**BANCORPSOUTH BANK**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/14/2014 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER III |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | B. WAYNE WILLIAMS |
| | LAWRENCE M. COCO III |
| | NORMA CARR RUFF |
| | DAN W. WEBB |
| | R. PATRICK MCCRANEY |
| | ANDREW WALKER ALDERMAN |
| ATTORNEYS FOR APPELLEE: | LES ALVIS |
| | J. CHASE BRYAN |
| | KEVIN B. SMITH |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | NEW VISION AND BAROT'S MOTION TO DISMISS AND COMPEL ARBITRATION DENIED; PATEL'S MOTION TO DISMISS AND TRANSFER DENIED |
| DISPOSITION: | REVERSED, RENDERED, AND REMANDED – 03/03/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**IRVING, P. J., FOR THE COURT:**

¶1.     Bharat B. Patel, New Vision Brandon Plaza LLC, and Jagdish A. Barot (collectively

"the Defendants," unless the context dictates otherwise) appeal a Lee County Circuit Court

judgment in favor of BancorpSouth that denied Patel's motion to compel arbitration. Finding that the circuit court misapplied the law, we reverse and render the judgment of the circuit court and remand this case with directions to dismiss BancorpSouth's lawsuit, and send the case to binding arbitration.

PROCEDURAL HISTORY AND STATEMENT OF THE FACTS

¶2.    In 2009, BancorpSouth held a deed of trust on a parcel of undeveloped commercial property of approximately thirty-five acres located in Rankin County, Mississippi.  In March 2009, the property was facing foreclosure.  The Defendants purchased the property before the foreclosure sale, but would later claim that they had been fraudulently induced to purchase it based on a bid amount, set by BancorpSouth, of $5.3 million and that BancorpSouth had failed to disclose that the property contained wetlands that required remediation.

¶3.    At the time of purchase, New Vision executed a promissory note (the Note) and a deed of trust.  By separate, individual agreements (the Guaranties), Barot and Patel guaranteed payment of the Note.  The Note and the Guaranties contained similar, but not identical, arbitration provisions.  Section 29 of the Note states:

> Any and all claims, disputes[,] or controversies . . . by either Borrower or Lender . . . arising from or relating to (a) this Note . . . *shall be* resolved upon the election of Borrower or Lender or said third parties, by *binding arbitration* pursuant to this Section 29 and the code of procedure of the entity which is the Arbitration Organization at the time the Claim is filed.

(Emphasis in original).  Section 22 of the Guaranties similarly states:

2

Any claim, dispute[,] or controversy . . . by either Borrower, Guarantor[,] or Bank . . . arising from or relating to (a) any of the Obligations [of the Guaranty] . . . SHALL BE resolved upon the election of Guarantor or Bank . . . by BINDING ARBITRATION pursuant to this Arbitration Provision and the Code of Procedure of the Arbitration Organization in effect at the time the Claim is filed and all Claims shall be filed at any Arbitration Organization office.

(Emphasis in original).

¶4. On September 5, 2012, BancorpSouth filed suit against the Defendants in the Lee County Circuit Court (the Lee County Action) to collect the unpaid balance of the loan. On September 20, 2012, before answering the Lee County Action,[1] the Defendants filed a lawsuit in the Rankin County Circuit Court (Rankin County Action) to rescind and avoid the Note and Guaranties, demanding a jury trial and claiming they were fraudulently induced by BancorpSouth to buy the property. The Defendants also claimed that they had defaulted on the loan, with an unpaid balance of $4,926,116.39, because they could not develop the property due to the fact that it contained wetlands.

¶5. On October 24, 2012, BancorpSouth filed a motion to dismiss the Rankin County Action under the first-to-file rule[2] or, alternatively, to transfer the case to Lee County.

---

[1] The docket contained in the record reflects that summonses were issued on September 5, 2012, for the Defendants, but it does not show that the any of the summonses were ever served. Additionally, the record reflects that on October 31, 2012, a lawyer entered an appearance on behalf of Patel only.

[2] The first-to-file rule is well established in Mississippi: "[W]here two suits between the same parties over the same controversy are brought in courts of concurrent jurisdiction, the court which first acquires jurisdiction retains jurisdiction over the whole controversy to the exclusion or abatement of the second suit." *Issaquena Warren Ctys. Land Co. v. Warren Cty.*, 996 So. 2d 747, 750 (¶8) (Miss. 2008) (quoting *RAS Family Partners LP v. Onnam*

3

¶6.     On November 19, 2012, New Vision and Barot filed, in the Lee County Action, a joint answer, a compulsory counterclaim, and a motion to dismiss and compel arbitration. The fifth defense in their answer affirmatively asserted their right to arbitration as specified in both the Note and Guaranties. The counterclaim was asserted "without waiving and expressly preserving [New Vision and Barot's] right to arbitration." On the same day, Patel separately answered the Lee County Action. He raised forty-six affirmative defenses in his answer, but did not raise arbitration. However, in a separately filed motion to dismiss, Patel, by reference, adopted Barot and New Vision's motion to dismiss and compel arbitration. He also filed a motion to transfer the case to the Rankin County Circuit Court.

¶7.     The Rankin County Circuit Court heard BancorpSouth's motion to dismiss in April 2013, one week before the hearing in the Lee County Action on New Vision and Barot's motion to compel arbitration. On April 29, 2013, the Rankin County Chancery Court dismissed the Rankin County Action under the first-to-file rule, and on August 15, 2014, the Lee County Circuit Court denied New Vision and Barot's motion to dismiss and compel arbitration, as well as Patel's motion to dismiss and/or to transfer the case to Rankin County. The trial court found that the Defendants had waived their contractual right to arbitration by engaging in conduct inconsistent with arbitration (filing the Rankin County Action). The Defendants have timely appealed.

DISCUSSION

---

*Biloxi LLC*, 968 So. 2d 926, 929 (¶16) (Miss. 2007)).

4

¶8. On appeal, the grant or denial of a motion to compel arbitration is reviewed de novo. *Nutt v. Wyatt*, 107 So. 3d 989, 993 (¶10) (Miss. 2013) (quoting *Scruggs v. Wyatt*, 60 So. 3d 758, 766 (¶16) (Miss. 2011)). We also note that so far as we can tell, there is no Mississippi precedent addressing the unique facts presented in today's case—whether a defendant who is obligated to arbitrate a matter waives that right by initiating litigation concerning that matter in a separate lawsuit.

¶9. The circuit court, in denying the Defendants' motion to dismiss and compel arbitration in the Lee County Action, found that the Defendants had waived their contractual right to arbitrate by initiating the Rankin County Action. In support, the circuit court cited *Century 21 Maselle & Associates v. Smith*, 965 So. 2d 1031 (Miss. 2007). *Century 21* promulgated the test that arbitration can be waived by a party through "either active participation or substantial invocation of the litigation process which results in detriment or prejudice to the other party, or engaging in conduct inconsistent with timely enforcing the arbitration agreement . . . ." *Id.* at 1036 (¶8). The circuit court applied the second alternative of the test, stating that the Defendants had engaged in "conduct [(the filing of the Rankin County Action)] inconsistent" with enforcing the arbitration agreement; thus, arbitration was waived.[3]

---

[3] The trial court further found the compulsory counterclaim by New Vision, Barot, and Patel in the Lee County Action, and Patel's seeking to transfer this cause to Rankin County, were also inconsistent with requesting arbitration, and confirmed the waiver of arbitration.

5

¶10. "[P]arties claiming waiver must offer sufficient evidence at a hearing to overcome the presumption in favor of arbitration." *Id.* The parties here agree that *Century 21* is binding, and that the second alternative of the test—"engaging in conduct inconsistent with timely enforcing the arbitration agreement"—is applicable. BancorpSouth claims this test is applicable to New Vision, Barot, and Patel as plaintiffs in the Rankin County Action. We agree, but they are not seeking to arbitrate matters in that action. And, as we discuss below, what they did as plaintiffs in the Rankin County Action is material to that action, and what the defendants did, or failed to do, in the Lee County Action is material to that action.

¶11. In support of their argument that their filing of the Rankin County Action does not constitute waiver or preclude arbitration in the Lee County Action, the Defendants point to the Mississippi Supreme Court's pronouncement in *Mississippi Credit Center Inc. v. Horton*, 926 So. 2d 167 (Miss. 2006):

> [N]either delay in pursuing the right to compel arbitration nor participation in the judicial process, standing alone, will constitute a waiver. That is to say, a party who invokes the right to compel arbitration and pursues that right will not ordinarily waive the right simply because of involvement in the litigation process . . . .

*Id.* at 180 (¶41). The Defendants argue that their right to arbitrate was timely asserted approximately two and one-half months after the Lee County Action was filed; thus, according to *Horton*, waiver of arbitration was precluded. By this argument, it appears that the Defendants tacitly agree that their actions, as plaintiffs, in the Rankin County Action are relevant to the Lee County Action, where they are defendants. If that is what the Defendants

6

are asserting, we disagree with that part of their argument. However, we agree that the Defendants timely asserted their right to arbitrate in the Lee County Action, as the record reveals that they asserted that right in their initial filings.

¶12. Since none of the parties assert that the actions undertaken by the Defendants in the Lee County Action to compel arbitration were untimely, we will not discuss this issue any further. The heart of BancorpSouth's argument is not the timeliness of the Defendants' assertion of their right to arbitrate within the Lee County Action, but the Defendants' filing of the Rankin County Action and its impact on their right to compel arbitration in the Lee County Action.

¶13. While we agree that *Century 21* is controlling, we find that the circuit court misapplied it. In a lawsuit brought by a plaintiff, the right to compel arbitration of the issues contained in the plaintiff's lawsuit belongs to the defendant if there exists an arbitration agreement, executed by the plaintiff and defendant, that covers the matters addressed in the lawsuit. Therefore, it seems obvious that by initiating the Rankin County Action, the Defendants, who were plaintiffs in that action, waived their right to arbitrate the matters contained in that lawsuit because the filing of the action itself is inconsistent with a desire to take advantage of the right to arbitrate. So had the Rankin County Action been initiated first and remained viable, the Defendants, who were plaintiffs there, would not have been able at some point later to change their minds and seek arbitration. By the same token, it can be legitimately argued that by initiating the Lee County Action, BancorpSouth waived its

7

right to arbitrate the issues contained in that suit, but the same cannot be said about Patel, New Vision, and Barot because they are the defendants in the Lee County Action.

¶14. The Defendants argue that *Nutt* is dispositive. *Nutt* involved two suits over the amount of attorney fees owed to Derek Wyatt as a result of work he performed in connection with litigation on behalf of Hurricane Katrina insureds. *Nutt*, 107 So. 3d at 991-92 (¶¶3-5). It was not disputed that David H. Nutt and others entered into a contract with Wyatt whereby Nutt and others engaged Wyatt's services. The dispute was over the nature of the agreement. Wyatt insisted that he was part of the Katrina Joint Venture (KJV) that Scruggs Law Firm Inc., Nutt & McAlister PLLC, and others formed to represent Hurricane Katrina insureds and that he was entitled to a minimum ten percent fee-sharing interest in the KJV cases. *Id*. On the other hand, Nutt and the others' position was that they orally agreed to pay Wyatt an annual salary plus a bonus based on ten percent of the net fees that Nutt received from cases on which Wyatt provided substantial services to clients. *Id*.

¶15. The first suit was filed by Nutt in the Chancery Court of Madison County, which the supreme court described as follows:

> Nutt, et al., filed a "Verified Petition for Replevin and Complaint for Declaratory Judgment to Adjudicate Amount Owed by Nutt & McAlister, PLLC to Wyatt, or Amount Owed by Wyatt to Nutt & McAlister, PLLC". . . . In that action, Nutt, et al., sought a declaration of obligations related to the oral employment contract with Wyatt; their complaint did not refer to the KJV, and they did not aver that Wyatt was a party to the KJV.

*Id.* at 991 (¶4). The second suit was filed by Wyatt in the Lafayette Circuit Court (Lafayette County Case) against Scruggs, Nutt, and others. That suit claimed that he had been "denied

8

his share of KJV attorney fees as agreed upon by Nutt and McAlister." *Id*. at 991-92 (¶5). Nutt and others filed a motion to transfer the Lafayette County Case to Madison County or to stay the proceedings in the Lafayette County Case pending a final judgment in the Madison County proceedings. The trial court denied the motion. *Id*. at 992 (¶6). Scruggs then filed a motion to compel arbitration in the Lafayette County Case, "seeking to compel Wyatt to arbitrate his claims against them under the arbitration provision in the [Katrina Joint Venture Agreement (KJVA)]." *Id*. at (¶7). The circuit court denied the motion but stayed the proceedings pending an appeal by Scruggs. *Id*.

¶16.    On appeal, the supreme court found that the KJVA arbitration provision was valid and that it applied to Wyatt's claims against Scruggs under the "direct-benefit rule" even though Wyatt was not a signatory to the KJVA. *Id*. at (¶8). Therefore, the supreme court reversed and remanded the Lafayette County Case.

¶17.    Immediately after remand, Nutt "filed a motion to remove the earlier stay granted by the [circuit court] and to compel arbitration of Wyatt's claim." *Id*. at 993 (¶9). The circuit court denied Nutt's motion even though it found, based on the supreme court's ruling in the Scruggs appeal, that the arbitration provision was also applicable to the Nutt defendants. *Id*. The circuit court explained that

> Nutt [and others] had waived their right to compel arbitration by: (1) filing a motion to transfer venue prior to filing their motion to compel arbitration; (2) delaying 595 days before filing their motion to compel arbitration; and (3) filing a prior action in Madison County Chancery Court seeking declaratory judgment regarding Wyatt's rights under the oral employment contract.

9

*Id*. Nutt appealed.

¶18.   On appeal, although the supreme court discussed Nutt's prior filing in the Madison County Chancery Court and the nature of that filing being different than the basis asserted by Wyatt in the Lafayette County Case, it is clear from any objective reading of *Nutt* that the supreme court's holding was premised solely on Nutt's action in the Lafayette County Case where he was a defendant, not what he did prior to being made a defendant.  Here is what the supreme court said:

> In their first responsive pleading, before this [c]ourt's decision that the Katrina JVA applied to Wyatt's claims, Nutt, et al., preserved their right in the alternative to compel arbitration, in the event of a judicial determination that the Katrina JVA applied to Wyatt's claims.  When we declared that the Katrina JVA did apply, they timely filed a motion to compel arbitration, within one week of the mandate.  We find that the conduct of Nutt, et al., was consistent with timely seeking to compel arbitration, once this [c]ourt held that Wyatt's claims were related to the Katrina JVA.  Accordingly, we conclude that Nutt, et al., did not waive their right to enforce the provision.

*Id*. at 994-95 (¶14).  At another point in the opinion, the supreme court said this:

> We find that Nutt, et al., did not actively participate in litigation or substantially invoke the litigation process ***in this case*** before seeking to enforce the provision, nor did they conduct themselves inconsistently with timely enforcing the provisions.  The trial court erred by finding that Nutt, et al., waived their right to compel arbitration by participating in litigation and delaying filing a motion to compel arbitration.

*Id*. at 996 (¶19) (emphasis added).  It is clear that the ultimate matter in dispute in both the Madison County Case and the Lafayette County Case was attorney fees, if any, owed to Wyatt, although the parties pursued different theories or avenues to get to a determination in that regard.  So while our case is not factually on all-fours with *Nutt*, we nevertheless

10

believe it is instructive on the law to be applied here.

¶19.    The dissent apparently concludes that the reason the supreme court held in *Nutt* that Nutt's prior filing of the Madison County lawsuit had not waived his right to arbitrate Wyatt's claim against it in the Lafayette County Case is because the two actions dealt with very different matters—an employment agreement and a joint-venture agreement.  That is not an entirely accurate characterization of the lawsuits.  There was only one agreement, which was an oral employment agreement.  The dispute was over whether that oral agreement fell within the parameters of the arbitration provision of the KJVA even though Wyatt was not a signatory to it.  As stated, Nutt, taking the position that the KJVA was inapplicable—though not directly litigating that issue in the Madison County Case—sought instead in the Madison County Case a declaration of obligations related to the oral employment contract with Wyatt.  It is not reasonably debatable that the *Nutt* decision declared that one of the obligations related to the oral employment contract is that it was subject to the arbitration provision of the KJVA, which was the subject matter of Lafayette County Case.  So it is clear that the two lawsuits were related but employed procedurally different mechanisms to resolve the attorney's fee dispute between the antagonists in the lawsuits.  In any event, there is nothing in *Nutt* warranting the extrapolation that if the pleadings in Nutt's Madison County Case had mentioned the KJVA, the result would have been a finding that he waived his right to arbitrate Wyatt's claim in the Lafayette County Case.

11

¶20. We also find the dissent's and BancorpSouth's reliance on *United States ex rel. Frank A. Trucco & Sons Co. v. Bregman Construction Corp.*, 256 F.2d 851, 852 (7th Cir. 1958), unavailing in light of the *Nutt* decision. Even so, we will briefly discuss the *Trucco* decision. There, Bregman Construction (Bregman) initially sued Frank A. Trucco & Sons' (Trucco) surety in the state of New York for Trucco's breach of a public-works subcontract that contained an arbitration provision. *Id.* Trucco then sued Bregman in Indiana for breach of the same subcontract, and Bregman tried to invoke the arbitration provision. *Id.* The district court ruled that Bregman waived its right to arbitrate because of its filing suit in New York. *Id.* The United States Court of Appeals for the Seventh Circuit stated:

> [T]he district court properly determined this matter. To hold otherwise would place Bregman in the unique and untenable position of demanding the right to litigate one phase of its dispute with Trucco while at the same time insisting upon arbitration of another phase of its dispute, all of such controversy arising out of its sub-contract with the other disputants.

> * * * *

> We hold, in the instant case, that Bregman, by filing its New York action, repudiated its own promise to arbitrate as set out in its sub-contract with Trucco. This repudiation gave use-plaintiff the election of arbitration which it did not exercise in the New York action. By filing its complaint under the Miller Act in this court use-plaintiff then made its election not to arbitrate. Thus, each party elected not to arbitrate, the one by filing an action in New York for alleged failures on a performance bond, and the other by bringing suit in Indiana for money alleged due for labor and materials under a payment bond, both actions arising out of the same sub-contract. We hold that Bregman thereby conclusively waived its right to arbitration in the instant case.

*Id.* at 853-54.

¶21. We acknowledge that the facts in *Trucco* are somewhat comparable to our facts, but

12

point out that they are different in a significant aspect in that in *Trucco*, Bregman, the party seeking to compel arbitration, apparently was not precluded from continuing his pursuit of the separate litigation that he had initiated.[4] Here, the Defendants were unable to pursue the Rankin County Action because of the first-to-file rule. That was not the case in *Trucco*; otherwise Trucco would not have been able to maintain its lawsuit. Further, had Bergman's separate lawsuit been dismissed at the time of the hearing on its motion in *Trucco* to compel arbitration, there would have been no reason for the Seventh Circuit's finding that Bregman was "demanding the right to litigate one phase of its dispute with Trucco while at the same time insisting upon arbitration of another phase of its dispute." Here, at the time that the Lee County circuit judge denied the Defendants' motion to compel, more than four months had passed since the Defendants' Rankin County Action had been dismissed. So here, unlike Bergman's position in *Trucco*, the Defendants' position was not untenable as they were not attempting to have their dispute with BancorpSouth resolved by both a jury panel and an arbitration panel. The most that they did was seek a transfer of the Lee County Action to Rankin County.

¶22. We also agree with Patel's argument that the Rankin County Action could not constitute a waiver of arbitration because that court lacked subject-matter jurisdiction. Under the priority-jurisdiction rule, jurisdiction was established in Lee County before the

---

[4] The *Trucco* decision does not inform us as to the time proximity of the filing of Bregman's lawsuit and the filing of Trucco's lawsuit.

13

Defendants filed their Rankin County Action. Therefore, it seems logical to us that the Rankin County Action had no ability to impact the rights of any party and could not support waiver.

¶23. For the reasons discussed, we find that the circuit court erred in refusing to grant the Defendants' motion to compel. Consequently, we reverse and render the judgment of the circuit court and remand this case for proceedings consistent with this opinion.

¶24. **THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS REVERSED AND RENDERED, AND THIS CASE IS REMANDED WITH DIRECTIONS TO DISMISS BANCORPSOUTH'S LAWSUIT AND SEND THIS CASE TO BINDING ARBITRATION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., CARLTON, FAIR AND JAMES, JJ., CONCUR. WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., ISHEE AND GREENLEE, JJ.**

**BARNES, J., DISSENTING:**

¶25. I respectfully dissent. The trial court properly found Defendants' filing suit in Rankin Count constituted an act inconsistent with arbitration. Therefore, I would affirm the trial court's denial of Defendants' motion to dismiss and compel arbitration.

¶26. This case involves the unique situation where Defendants requested arbitration on repayment of the Note and Guaranties in this suit after filing suit in another county "arising from or relating to" the same documents. The trial court, in denying Defendants' motion to dismiss and compel arbitration, found that Defendants waived their contractual right to arbitrate, citing in support *Century 21 Maselle & Associates v. Smith*, 965 So. 2d 1031 (Miss.

14

2007). *Century 21* promulgated the test that arbitration can be waived by a party through "either active participation or substantial invocation of the litigation process which results in detriment or prejudice to the other party, or engaging in conduct inconsistent with timely enforcing the arbitration agreement . . . ." *Id.* at 1036 (¶8). The trial court correctly applied the second alternative of the test, stating that the filing of the Rankin County Action constituted "conduct inconsistent" with enforcing the arbitration agreement; thus, arbitration was waived.[5]

¶27.    While "waiver of arbitration is not a favored finding," Mississippi does "recognize waiver when the party seeking arbitration takes actions inconsistent with enforcing arbitration . . . ." *Nutt v. Wyatt*, 107 So. 3d 989, 993 (¶11) (Miss. 2013). "[P]arties claiming waiver must offer sufficient evidence at a hearing to overcome the presumption in favor of arbitration." *Century 21*, 965 So. 2d at 1036 (¶8). The parties agree that *Century 21* is binding, and the second alternative of the test – "engaging in conduct inconsistent with timely enforcing the arbitration agreement" – is applicable. BancorpSouth claims this test

---

[5] The trial court further found the compulsory counterclaim by New Vision, Barot, and Patel in the Lee County Action, and Patel's seeking to transfer this cause to Rankin County, were also inconsistent with requesting arbitration, and confirmed the waiver of arbitration. Since the counterclaim was compulsory under Mississippi Rule of Civil Procedure 13(a), however, I disagree with the trial court that the counterclaim contributed to the waiver of arbitration. Had the compulsory counterclaim not been asserted, New Vision and Barot would have been subject to a claim of waiver. *See* M.R.C.P. 13(a) Advisory Committee Notes (Subject to the exceptions, "counterclaims are compulsory if they arise out of the same transaction or occurrence that is the subject matter of the opposing party's claim"; generally, compulsory counterclaims are asserted in pending litigation to avoid waiver.).

is applicable to New Vision, Barot, and Patel as plaintiffs in the Rankin County Action, because they commenced the Rankin County Action before they filed an answer or any other pleading in the Lee County Action. Defendants insist that the filing of the Rankin County Action in no way impacted their right to arbitrate in the Lee County Action. I agree with the trial court that although in *Century 21* the test was applied to defendants, it can properly be applied to plaintiffs as well.

¶28. Defendants claim that mere involvement in the litigation or judicial process does not constitute waiver, citing *Mississippi Credit Center Inc. v. Horton*, 926 So. 2d 167, 180 (¶41) (Miss. 2006):[6]

> [N]either delay in pursuing the right to compel arbitration nor participation in the judicial process, standing alone, will constitute a waiver. That is to say, a party who invokes the right to compel arbitration and pursues that right will not ordinarily waive the right simply because of involvement in the litigation process . . . .

They argue their right to arbitrate was timely asserted approximately two and one-half months after the Lee County Action was filed; thus, according to *Horton*, waiver of arbitration was precluded.

¶29. However, Defendants ignore the fact that this case deals with two separately filed suits, unlike *Horton* and numerous other cases Defendants cite. This case is unique in that

---

[6] In *Horton*, while the defendants timely asserted their right to compel arbitration in their answers, they did not file a motion to compel arbitration in a reasonable time, and "proceeded to substantially engage the litigation process" for eight months. *Horton*, 926 So. 2d at 180 (¶¶41, 43). Because of both delay and engaging in the litigation process, the supreme court found the defendants' right to arbitration was waived. *Id.* at 181 (¶¶45-46).

16

it deals with the interaction of two separate cases and waiver of the contractual right to arbitrate. It is not the timeliness of asserting the right to arbitrate within the Lee County Action that is at issue, but the filing of the Rankin County Action, and its impact on Defendants' right to compel arbitration of the Lee County Action. The proper time to raise arbitration is at the time the party first advances arbitrable issues. *Galion Iron Works & Mfg. v. J.D. Adams Mfg.*, 128 F.2d 411, 414 (7th Cir. 1942). New Vision, Barot, and Patel made the strategic decision to file a lawsuit demanding a jury trial in Rankin County concerning the same issues that they later raised in their Lee County counterclaim. It is obvious that Defendants wanted to litigate; they just did not want to litigate in Lee County. As admitted by Defendants in oral argument, they filed a compulsory counterclaim, but only wanted to arbitrate BancorpSouth's claim for repayment. They wanted a jury trial in Rankin County on their claims against BancorpSouth. They contended, as they did below, that the Rankin County Action would only be arbitrated if BancorpSouth demanded arbitration.[7] This

---

[7] At the trial court hearing, counsel for New Vision and Barot stated:

Your Honor, if I might respond to one thing that [BancorpSouth's counsel] just said . . . I want to make sure that I'm clear in terms of the nature of the Rankin County case versus the nature of this case. The Rankin County case, again, is our claims against BancorpSouth. And it may be that we have waived the right to arbitrate our claims against them. Now it's up to them [as] to whether or not they want to arbitrate those.

But as it relates to their claims against us which are pending here, we have invoked our right to arbitration. So there is a distinction there that they want to somehow merge together, but they are distinct claims.

17

rationale, however, ignores the contractual language that "any and all claims, disputes and controversies . . . arising from or relating to" the Note are to be resolved by arbitration at the election of the borrower or lender. There is no contractual provision for splitting a cause of action between arbitration and litigation.

¶30.    Under *Century 21*, prosecuting the Rankin County Action is inconsistent with arbitration and constitutes waiver. At the time New Vision and Barot invoked arbitration in the Lee County Action, they were seeking to litigate their claims against BancorpSouth in Rankin County. It was only because BancorpSouth had "beaten them to the courthouse" that arbitration even became an issue.[8] Defendants also argue that BancorpSouth has shown no prejudice by the filing of the Rankin County Action. However, under the *second* alternative of the *Century 21* waiver rule, there is no requirement of prejudice to the other party. *Century 21*, 965 So. 2d at 1036 (¶8).

¶31.    Defendants rely on *Nutt* as dispositive. *Nutt* involved two suits, and held that a plaintiff bringing a court action seeking limited relief does not waive the plaintiff's right to arbitrate other issues. *Nutt*, 107 So. 3d at 995 (¶14). In *Nutt*, the plaintiff, David Nutt, filed a lawsuit in Madison County Chancery Court on an employment agreement seeking replevin and a declaratory judgment from Derek Wyatt. *Id.* at 991 (¶4). Then, Wyatt sued Nutt in

---

[8] Similarly, Patel was the co-plaintiff in the Rankin County Action, and did not raise arbitration as an affirmative defense when he filed his answer in the Lee County Action. Further, Patel filed a motion to transfer venue of the Lee County Action to Rankin County, not a motion to compel arbitration. These actions confirm Patel's desire to litigate, not arbitrate.

Lafayette County Circuit Court for attorney's fees claimed under a joint-venture agreement. *Id.* at 991-92 (¶5). Nutt invoked arbitration in the second suit, and the trial court denied it as waived. *Id.* at 993 (¶9). The supreme court reversed the trial court's judgment, however, holding that Nutt's filing of the first suit in Madison County was not a waiver of the right to arbitrate Wyatt's claims in Lafayette County because the two actions dealt with very different matters – an employment agreement and a joint-venture agreement. *Id.* at 993, 996 (¶¶9, 18). Here, New Vision and Barot's compulsory counterclaim in the Lee County Action and their earlier-filed Rankin County Action both clearly "aris[e] from or relat[e] to" the contractual documents that formed the basis for BancorpSouth's Lee County complaint. Whether Defendants owe BancorpSouth repayment on the Note and Guaranties is central to both suits.[9] Thus, *Nutt* is distinguishable.

¶32. I find *United States ex rel. Frank A. Trucco & Sons Co. v. Bregman Construction Corp.*, 256 F.2d 851, 852 (7th Cir. 1958), cited by BancorpSouth, instructive. Bregman initially sued Trucco's surety in the state of New York for Trucco's breach of a public-works subcontract that contained an arbitration provision. *Id.* Trucco then sued Bregman in Indiana for breach of the same subcontract, and Bregman tried to invoke the arbitration provision. *Id.* The district court ruled that Bregman waived its right to arbitrate because of its filing suit in New York. *Id.* The United States Court of Appeals for the Seventh Circuit

---

[9] BancorpSouth's Lee County Action seeks enforcement of the Note and two Guaranties. As noted by the Lee County Circuit Court, the Lee County counterclaim was "almost identical" to the allegations of the Rankin County complaint.

held:

> [T]he district court properly determined this matter. To hold otherwise would place Bregman in the unique and untenable position of demanding the right to litigate one phase of its dispute with Trucco while at the same time insisting upon arbitration of another phase of its dispute, all of such controversy arising out of its sub-contract with the other disputants.

*Id.* at 853.

¶33. Here, New Vision and Barot were demanding the right to litigate their claims against BancorpSouth in Rankin County while insisting upon arbitration of BancorpSouth's claims. I agree with the Seventh Circuit that this would be an "untenable position." The trial court did not err in finding Defendants' act of filing suit in Rankin County "inconsistent with arbitration."

¶34. Patel filed supplemental authority under Mississippi Rule of Appellate Procedure 28(k), claiming the Rankin County Action could not constitute waiver of arbitration because that court lacked subject-matter jurisdiction. Patel states, under the priority-jurisdiction rule, jurisdiction was established in Lee County, and Rankin County was without subject-matter jurisdiction. Since the Rankin County Action lacked subject-matter jurisdiction, and thus was dismissed without prejudice and not on the merits, Patel argues the Rankin County Action had no ability to impact the rights of any party, and could not support waiver. I do not find this argument persuasive; the suit was filed and prosecuted with the intent to litigate, which are acts inconsistent with waiver.

¶35. Defendants further argue that BancorpSouth has "contracted away [its] right to claim

20

waiver."  Both the Note and Guaranties provide:  "IF ARBITRATION IS NOT CHOSEN BY EITHER PARTY AT ANY STAGE OF AN ACTION OR PROCEEDING IN COURT, *BOTH* BORROWER AND LENDER HEREBY WAIVE ALL RIGHTS TO TRIAL BY JURY."  (Emphasis in original).  New Vision and Barot interpret this to mean that they may assert arbitration at any time.  I do not.  As BancorpSouth notes, this provision is located under a separate heading:  "WAIVER OF JURY TRIAL."  In context, the provision indicates that no party will have the right to a jury trial even if the dispute is not arbitrated; it does not mean the parties can raise arbitration at any time.[10]

¶36.    Lastly, at oral argument, New Vision and Barot claimed the following language from the Note means that the act of instituting a lawsuit is not a waiver of arbitration:  "THE INITIATION OF A CLASS ACTION OR AN ACTION IN WHICH BORROWER IS ONE OF TWO OR MORE PLAINTIFFS SHALL NOT RELIEVE EITHER PARTY FROM THE OBLIGATIONS OF ARBITRATION CONTEMPLATED BY THIS SECTION 29."  New Vision and Barot, however, read the provision out of context.  The full third paragraph of Section 29 of the Note provides:

> IN THE EVENT BORROWER INITIATES AN ACTION AT LAW OR IN EQUITY AGAINST LENDER EITHER AS A MULTI-PLAINTIFF LAWSUIT OR IN A CLASS ACTION LAWSUIT, THE PROVISIONS OF

---

[10]  Patel relatedly argues that BancorpSouth breached the arbitration provisions by taking the position that Defendants waived the right to arbitrate.  I am not persuaded by this argument. BancorpSouth's assertion of waiver does not breach the arbitration agreement any more than Defendants breached the agreement by demanding a jury trial in the Rankin County Action in violation of the Note and Guaranties.

21

THIS SECTION 29 SHALL APPLY TO BORROWER, ALONE OR AS AN INDIVIDUAL AND SHALL NOT APPLY SO AS TO REQUIRE ARBITRATION FOR A PLAINTIFF CLASS OR FOR A GROUP OF PLAINTIFFS, BORROWER BEING INDIVIDUALLY AND SEPARATELY BOUND BY THE TERMS OF THIS SECTION 29 RATHER THAN AS A CLASS REPRESENTATIVE OR GROUP. MOREOVER, THE INITIATION OF A CLASS ACTION OR AN ACTION IN WHICH BORROWER IS ONE OF TWO OR MORE PLAINTIFFS SHALL NOT RELIEVE EITHER PARTY FROM THE OBLIGATIONS OF ARBITRATION CONTEMPLATED BY THIS SECTION 29.

¶37. The paragraph clearly addresses two separate situations. The first part concerns class arbitration. *See generally* Thomas H. Oehmke, *Oehmke Commercial Arbitration* § 16:9 (Defenses to class arbitration – Prohibition on class arbitration); § 16:13 (Defenses to class arbitration – Waiver of class arbitration) (3rd ed. 2015). In the event the borrower (New Vision) *initiates* a class action (or multi-party action) against BancorpSouth, the arbitration provisions only apply to the individual borrower, and election by BancorpSouth to arbitrate will not require arbitration for a plaintiff class or group of plaintiffs. The second concerns the rights of the unwilling class members or "involuntary plaintiffs." *See In re Piper Funds Inc.*, 71 F.3d 298, 303-04 (8th Cir. 1995) (contractual right to arbitrate "may not be sacrificed on the altar of efficient class action management"; "unwilling class member's right to arbitrate may not be held hostage . . . ."); M.R.C.P. 19(a) (joinder of parties; involuntary plaintiffs). The last sentence, written in the passive, versus active, voice, provides that if a class or multi-party action is filed and the borrower is one of the plaintiffs, that alone will not prevent the borrower from exercising its right to arbitrate. This situation applies if the lawsuit is initiated and the borrower is a plaintiff; it does not state that the borrower can

initiate the action and still demand arbitration. Had the parties intended that result, the provision would have been written in the same manner as the first sentence: "[I]n the event borrower initiates an action at law or in equity against lender . . . ." It was not. Further, it would make no sense for the contract to provide that a party could not be found to have waived arbitration if it filed a lawsuit on behalf of two or more plaintiffs without a corresponding provision regarding filing as a singular plaintiff. Lastly, this paragraph concerning class action and multi-plaintiff lawsuits is found only in the Note but not the Guaranties; therefore, if New Vision's interpretation is correct, the result would mean that New Vision had not waived arbitration by filing the Rankin County Action but, having no similar provision in the Guaranties, Barot and Patel would have waived their rights to arbitrate. I do not accept New Vision and Barot's interpretation of this last sentence.

¶38. Based on the foregoing, I find the trial court correctly determined that Defendants waived their right to arbitrate by filing the Rankin County Action. Accordingly, I would affirm the trial court's denial of Defendants' motion to dismiss and compel arbitration.

**GRIFFIS, P.J., ISHEE AND GREENLEE, JJ., JOIN THIS OPINION.**